IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSE A. TANTAU                                                              PLAINTIFF
#253521

V.                              Case No. 4:26-CV-00413-LPR-BBM

BALWIN, Officer, Corrections, Pulaski
County Regional Detention Facility; and
LEMONS, Officer, Corrections, Pulaski
County Regional Detention Facility                                        DEFENDANTS

**ORDER**

## I.      INTRODUCTION

On April 24, 2026, Plaintiff Jose A. Tantau ("Tantau"), an inmate in the Pulaski

County Regional Detention Facility ("PCRDF"), filed a *pro se* Complaint under 42 U.S.C.

§ 1983. (Doc. 2). Before Tantau may proceed, the Court must screen his Complaint in

accordance with the Prison Litigation Reform Act ("PLRA").[1] 28 U.S.C. § 1915A(a).

## II.      ALLEGATIONS

Tantau claims that, on April 5, 2026, he wrote a grievance stating that he was in fear

for his life. (Doc. 2 at 4). In the Complaint, Tantau does not elaborate on why he was in

---

[1] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, the Court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

fear for his life that day. *See id.* It is also unclear if he explained the reasoning for his fear in his grievance and if he ever submitted the grievance to a PCRDF employee. *See id.*

The next morning, an unidentified officer "told the inmates [Tantau] was in fear for [his] life." (Doc. 2 at 4). And an unidentified person told Tantau "there will be revenge for this." *Id.* That afternoon, Tantau was punched in the face by an unidentified inmate for unidentified reasons. *Id.*

Tantau was then moved to a different barracks. (Doc. 2 at 4). Once there, Officer Lemons told Tantau that he would have to pay for protection. *Id.* Tantau's mother paid Officer Lemons $5,000 through a third-party payment application. *Id.*

Tantau sues Officer Balwin and Officer Lemons in their individual and official capacities. (Doc. 2 at 1–2). For relief, Tantau seeks "assurance of [his] safety" and that he will not have to "live in fear in PCRDF." *Id.* at 5. Alternatively, he seeks to be transferred to another facility. *Id.*

## III.    INITIAL SCREENING

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Id.* Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). However, "[a] pro se complaint must be liberally construed," and courts "should construe the complaint in a

2

way that permits the layperson's claim to be considered within the proper legal framework." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (cleaned up; citations omitted); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted).

Liberally construing Tantau's allegations, he raises failure-to-protect, property deprivation, and official-capacity claims. However, as pleaded, Tantau fails to state a claim for relief on any of the those claims. He also fails to plead any factual allegations against Officer Balwin.

### A.    Failure to Protect

In the Complaint, Tantau alleges that he is a pretrial detainee in fear for his safety in the PCRDF and, on April 6, he was punched in the face by an inmate. (Doc. 2 at 3–4). The Court construes this as a Fourteenth Amendment failure-to-protect claim. *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (noting that there is little practical difference between a Fourteenth Amendment and Eighth Amendment failure-to-protect claim). To maintain such a claim, Tantau must allege facts suggesting that (1) objectively, "he was incarcerated under conditions posing a substantial risk of serious harm"; and (2) subjectively, the defendants knew of and disregarded that substantial risk of serious harm. *Id*. (citation and quotation marks omitted).

Other than a single instance of being punched in the face by an unknown inmate for an unknown reason, Tantau provides little detail on why or how the conditions in PCRDF pose a substantial risk of harm to him. *See* (Doc. 2 at 4). But, even if the Court assumes that the conditions at PCRDF constitute a risk of harm to Tantau, the claim still fails

because Tantau has not explained how any Defendant was aware of that risk of harm. His vague allegation that he wrote a grievance, *id.*, does not suffice. Accordingly, as pleaded, Tantau fails to state a plausible failure-to-protect claim.

### B. Property Deprivation

Tantau also alleges that, after he was punched in the face, his mother paid Officer Lemons $5,000 to ensure Tantau's safety. (Doc. 2 at 4). To the extent Tantau may be attempting to raise a due process claim for the deprivation of property, the claim fails.

It is well settled that an inmate cannot maintain a Fourteenth Amendment due process claim for loss of property if he has an adequate post-deprivation remedy under state law. *See Hudson v. Palmer*, 468 U.S. 517, 533–36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981); *McClinton v. Arkansas Dept. of Corr.*, 166 F. App'x 260, 260–61 (8th Cir. 2006). Here, Tantau can seek to recover his property by filing a conversion action in state court. *See Bausley v. Dugan*, 110 F. App'x 736, 736 (8th Cir. 2004) (holding that a prisoner could not bring a § 1983 claim against county jail employees for seizure of personal property because he could bring a conversion action against them in state court); *Carniglia v. Dearmon*, 16 F. App'x 548, 549 (8th Cir. 2001) (same); *Butler v. Smith,* 208 F.3d 217, 217 (8th Cir. 2000) (holding that prisoner, who alleged he was wrongly charged for meals while housed at the county jail, could not seek § 1983 relief because he could bring a conversion claim in state court). Because Tantau has an adequate remedy under Arkansas law for any alleged loss of property, any such claim against Defendants fails to state a claim for relief.

### C.    Official-Capacity Claims

Tantau's official-capacity claims against the PCRDF staff "must be treated as a suit against the County." (Doc. 2 at 2); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). But Pulaski County cannot be held vicariously liable for constitutional violations committed by its employees. *See Id*. Instead, Pulaski County can only be held liable if the constitutional violation resulted from: "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019); *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016). Because Tantau has not made any such allegations, he has failed to plead any plausible official-capacity claims.

### D.    No Personal Action by Officer Balwin

Another flaw in Tantau's Complaint is that he does not allege any actions taken by Officer Balwin. In § 1983 actions, government officials are only liable for their *own* individual actions. *Iqbal,* 556 U.S. at 676. Without any facts regarding actions taken by Officer Balwin, the Court is unable to determine how that Defendant allegedly violated Tantau's constitutional rights. Thus, Tantau fails to state a plausible claim for relief against Officer Balwin.

## IV.    OPPORTUNITY TO AMEND

The Court will allow Tantau thirty (30) days, from the date of this Order, to file an Amended Complaint to correct the deficiencies in his current pleading. Tantau is placed on notice that, if he files the Amended Complaint, that pleading will supersede his previous Complaint. *See In re Atlas Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Accordingly,

his Amended Complaint should contain *all Defendants* he seeks to name in this matter, *all claims* he seeks to pursue in this action, and *the factual predicate* for all claims against all Defendants. If Tantau elects not to file an Amended Complaint, the Court will proceed to screen his original Complaint.

## V.      CONCLUSION

IT IS THEREFORE ORDERED THAT:

1.      The Clerk is directed to mail Tantau a § 1983 complaint form that is labeled "Amended Complaint."

2.      Tantau will be allowed to file, **within thirty (30) days of the date of this Order**, an Amended Complaint containing the facts necessary to support his claims. If he elects not to file a timely Amended Complaint, the Court will screen his Complaint, (Doc. 2).

SO ORDERED this 30th day of April, 2026.

_____
UNITED STATES MAGISTRATE JUDGE